CIVIC ASSOCIATION OF DEARBORN TOWNSHIP, DISTRICT NO. 3, *v.* HOROWITZ.

1. TOWNSHIPS—ZONING ORDINANCE—NONCONFORMING USES.
   Provision of township zoning ordinance relative to continuance of existing uses of premises not in conformity to the ordinance at time of its adoption is directed to the use of the land and buildings at time of adoption of the ordinance and not to persons occupying the same at that time (Dearborn Township Zoning Ordinance, §§ 3.07, 10.01 [f], 14.05).

2. SAME—ZONING ORDINANCES—NONCONFORMING USES—CARNIVALS.
   Under saving clause of township zoning ordinance which does not require a permit for continuance of nonconforming uses, the actual operation or visible use is not necessary in order to bring use of land for operation of outdoor carnival within such clause as such carnivals are seasonal in nature (Dearborn Township Zoning Ordinance, § 3.07).

3. SAME—ZONING ORDINANCE—CONTINUANCE OF NONCONFORMING
   USE.
   A lessee of premises that had been used for operating a carnival
   for several years before township zoning ordinance became
   effective could continue such use on the premises without a
   permit under ordinance provision as to nonconforming uses
   (Dearborn Zoning Ordinance, § 3.07).

4. NUISANCE—CARNIVAL—FINDING OF COURT—EVIDENCE.
   In suit to enjoin operation of a carnival, evidence supported
   finding that carnival as theretofore conducted by defendant
   lessee constituted a private nuisance against the rights of
   plaintiffs.

5. SAME—SHOWS—OPERATION—NOISE.
   While amusements, shows, exhibitions and public performances
   are not nuisances *per se*, they may become such when not con-
   ducted with decency, decorum and circumspection, or because
   of the noise or disturbance resulting from their operation.

6. SAME—PUBLIC EXHIBITION.
   A public exhibition of any kind that tends to the corruption of
   morals, or to a disturbance of the peace or of the general
   good order and welfare of society, is a public nuisance.

7. SAME—INJUNCTION—CARNIVAL—ELIMINATION OF OBJECTIONABLE
   FEATURES.
   Where operation of carnival on premises of defendant lessors
   constituted a nuisance but it appears that certain objection-
   able features connected therewith, such as gambling, use of
   intoxicating liquors, lack of adequate toilets and much of the
   noise, can be discontinued without irreparable injury to de-
   fendants, injunction against operation of carnival is continued
   until such features are shown to have been eliminated, the
   matter of parking of automobiles along public highway being
   subject to official regulation by township authorities.

Appeal from Wayne; Ferguson (Frank B.), J.
Submitted June 4, 1947. (Docket No. 21, Calendar
No. 43,484.) Decided June 27, 1947.

Bill by Civic Association of Dearborn Township,
District No. 3, a Michigan corporation, and others
against Vic Horowitz and others to restrain the
operation of a carnival. Decree for plaintiffs. De-
fendants appeal. Modified decree entered.

*Fildew & DeGree,* for plaintiffs.

*Rae, Hicks & Brackel,* for defendants.

SHARPE, J. This is a suit to restrain defendants from operating a street carnival on certain property leased by defendant Vic Horowitz in Dearborn township, Wayne county, Michigan.

In September, 1944, defendant Vic Horowitz leased a parcel of vacant property on the southeast corner of Outer Drive and West Warren avenue from defendants Clarence J. Daly and Alice Daly, his wife, to be used and occupied for an amusement park. The lease was executed September 1, 1944, and was to run for a period of 10 years, however, a prior lease existed upon the premises effective until May 1, 1945. Rental on defendants' lease did not begin until May 1, 1945.

On March 6, 1945, the township board of the township of Dearborn enacted a zoning ordinance effective April 6, 1945, by which the territory in the township was divided into business, residential and agricultural districts. The property in question is in the agricultural district.

Article 10 of the ordinance, relating to the agricultural district, prescribes various uses and provides:

"[Sec. 10.01. Uses permitted * * *] (f) Carnivals, outdoor circuses or migratory amusement enterprises subject to the provisions and requirements of article 14, § .05 (i) of the board of appeals."

Article 14, § .05, reads as follows:

"Jurisdiction. The board of appeals may, in specific cases, after due notice and hearing and sub-

ject to appropriate conditions and safeguards, determine and vary the application of the use, height and area district regulations herein established in harmony with their general purposes and intent, as follows:    *    *    *

"(i)    Permit a carnival, outdoor circus or migratory amusement enterprise in an agricultural district, provided that attached to the application for a permit shall be a letter of consent from the owner or owners of the property to be used for such purpose; also an affidavit that such location is a minimum distance of 1,500 feet from any existing residential building and a minimum distance of 50 feet from the street or highway right of way."

Section 3.07 of the ordinance provides:

"The lawful use of premises existing at the time of the adoption of this ordinance may be continued, although such use does not conform with the provisions hereof, and such uses may be extended throughout the building, provided no structural alterations or changes are made therein except those required by law or ordinance or such as may be required for safety, or such as may be necessary to secure or insure the continued advantageous use of the building during its natural life.    *    *    *

"Wherever a nonconforming use of a building or land has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed back to a less restricted use. .

"If a nonconforming use of a building or land is discontinued for a continuous period of 1 year, any subsequent use of such building or of the land on which the same is situated, shall be in conformity with the regulations specified by this ordinance for zoning districts in which such building and land are located.

"Immediately after the effective date of this zoning ordinance or amendment thereto, the township zoning board shall prepare a complete record

of all nonconforming uses and occupations of lands, buildings and structures, including tents and trailer coaches, existing at the time of such ordinance or amendment. Such record shall contain the names and addresses of the owners of such nonconforming use and of any occupant, other than the owner, the legal description of the land, and the nature and extent of the use. The township board shall prescribe the procedure for making any necessary corrections, and copies of the corrected record, when approved by the township board, shall be filed in the offices of the township clerk, and the register of deeds, which record shall constitute prima facie evidence of the number, character and extent of the nonconformance at the time this ordinance or an amendment thereto becomes effective. The record of nonconformance shall be reviewed annually as the township board shall prescribe.''

It is undisputed that defendant Horowitz failed to apply for and obtain a permit to operate his carnival in Dearborn township; and that there are residential buildings within 700 to 1,500 feet of its location. It is also undisputed that a carnival was operated upon the same premises during the summers of 1942, 1943, and 1944 and by defendants during the summer of 1945. On May 25, 1945, plaintiffs filed their bill of complaint seeking to halt the operation of a carnival upon the premises, alleging that the operation constituted a public and private nuisance.

The cause came on for trial and the trial judge entered an order enjoining defendants from using the premises for the purpose of operating a carnival. In an opinion, the trial judge made the following finding of facts:

''However, it is true under the evidence in this case, that, prior to the time that this carnival was operating, the plaintiffs were not bothered with a

great deal of parking along Outer Drive extending say four blocks with this residential section. They were not bothered by people going into the trailer camp and using their facilities. That parking and great number of people using the trailer camp facilities can be traced directly to the carnival grounds.

"While parking alone may not be considered a nuisance, the throwing of bottles and contraceptives onto the lawns of the parties along the street is a nuisance. It is a nuisance to have people from the carnival park do these things; and it is a nuisance for the people from the carnival park to go into the trailer camp and use the toilet facilities. That can be traced directly to the operating of the carnival.

"Furthermore, we have certain other things that come into the classification of nuisance. There is no question but what gambling was permitted upon the premises—open gambling; games of chance which attracted small children and teen-age children. There is testimony here that small children took money from their homes and spent it upon the carnival grounds. The operation of games of chance openly in this neighborhood constituted a nuisance to which the people living in that neighborhood had a right to object. There is testimony that bright lights could be seen by residents at 750 feet to 1,750 feet away. Mr. Perfetti testified that the machinery was in such condition that it made noise. Mr. Scheer also testified how it would die down, then increase in volume, and that would be a continuous repeated operation, and that the noise from the machinery kept the residents from going to sleep and on a number of occasions awakened them; that the noise of the patrons who used the ferris wheel could be distinctly heard 1,750 feet away."

Defendants do not challenge the validity of the ordinance, but urge that the carnival was not being

operated in violation of the zoning ordinance; that at the time of the adoption of the ordinance the premises were lawfully used for the operation of a carnival; and that section 3.07 of the ordinance permits the continued use of the premises for carnival purposes.

In our opinion the operation of a carnival on the premises in question prior to the adoption of the ordinance in question was a lawful use of the premises. Section 3.07 of the ordinance permitted the continued use of such premises for carnival purposes. This section is directed to the use of the land and buildings at the time of the adoption of the ordinance and not to the persons occupying the same at that time. The ordinance does not require a permit for nonconforming operations. We do not think that actual operation or visible use is necessary on the effective date of the ordinance in order to bring such operations within section 3.07. As a rule outdoor carnivals are seasonal in nature and are only operated during periods of spring and summer months.

In *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich. 261, on August 11, 1924, defendant purchased a lot in a residential section of the city of Kalamazoo and on January 5, 1925, placed thereon a small building for use as an ice service station and commenced the use of it on June 5, 1925. On January 26, 1925, the city of Kalamazoo adopted a zoning ordinance, designating the locality where plaintiff's lots were located as a residence district, excluding entry of business like defendant's, but saved existing nonconforming uses from its operation. We there said:

"Defendant's use of the station is seasonal. When defendant became owner of the premises, removed the old building, fitted the ground for and

placed its ice station building thereon and only awaited the ice demand season to serve the public, it occupied the premises in fact and for use in selling ice, and such was a lawful use of the premises existing at the time of the adoption of the zoning ordinance and nonconforming use expressly excepted from its provisions. Where an occupational use of the premises is seasonal, and the means for use are installed, and the opening of the season only awaited, there exists lawful occupational use of the same nature as periods of inactivity between seasons.''

In our opinion the use of the premises for carnival purposes was seasonal. There was no change or discontinuance of use of the land by either the owner or lessee. Such use for carnival purposes without a permit was lawful under section 3.07 of the ordinance. Defendant Horowitz having a lease of the premises may operate a carnival.

The trial court found that the method of operation of the carnival constituted a private nuisance. We have examined the record and conclude that the finding of facts noted in the trial court's opinion is supported by evidence introduced in this case; and that defendants have been guilty of maintaining a private nuisance against the rights of plaintiffs. It is within the jurisdiction of a court of equity to enjoin such a nuisance upon the complaint of private citizens who have suffered injury by the maintenance of such nuisance, see *MacKenzie* v. *Frank M. Pauli Co.*, 207 Mich. 456 (6 A. L. R. 1305).

In 39 Am. Jur. p. 346, it is said:

''At one time amusements were generally deemed to be nuisances in the eyes of the law, but at present the courts are astute to guard and protect the rights of all persons to assemble for purposes of health, recreation, and amusement. However, while amuse-

ments, shows, exhibitions, and public performances are not nuisances *per se,* almost any of the common forms of amusement may constitute a nuisance when not conducted with decency, decorum, and circumspection, or because of the noise or disturbance resulting from their operation.

"A public exhibition of any kind that tends to the corruption of morals, or to a disturbance of the peace or of the general good order and welfare of society, is a public nuisance. A merry-go-round or roller coaster may be a nuisance, on account of the noise resulting from its operation."

The decree of the trial court enjoins defendant Horowitz from operating the carnival and defendants Daly from leasing the premises to him for carnival purposes. As a result defendant Horowitz' business is destroyed upon those premises. We are concerned with the protection of the plaintiffs' rights as well as the protection of a lawful business. There are certain objectionable features connected with defendant's business which constitute a nuisance and can be discontinued without irreparable injury to defendants.

Mr. Horowitz has it within his power to prohibit gambling and other games of chance, as well as the use of intoxicating liquors upon the premises. The premises can be kept in a sanitary condition by installing toilets and thereby eliminating trespassing by patrons of the carnival upon the property occupied by plaintiffs in the trailer camp across the street from the premises where the carnival is operating. Much of the noise of the machinery in operation can be eliminated. Defendants do not have it within their control to regulate the parking of cars on the highway. This is a subject for official regulation by the township authorities.

The injunction heretofore granted will continue until such time as defendants offer satisfactory proof to the trial court that the objectionable features herein mentioned have been eliminated.

A modified decree will be entered in this Court in accordance with this opinion and the cause will be remanded to the circuit court in chancery of Wayne county with jurisdiction to hear and determine any further proceedings in this cause. Plaintiffs may recover costs.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.