Argued and submitted January 13, reversed February 9,
reconsideration denied March 12,
petition for review allowed April 7, 1981 (290 Or 727)

# POLK COUNTY,
*Appellant,*

*v.*

# MARTIN,
*Respondent.*

## (No. 26351, CA 17301)

622 P2d 1152

Dennis McCaffrey, Polk County Counsel, Dallas, argued the cause and filed the briefs for appellant.

M. Chapin Milbank, Salem, argued the cause for respondent. With him on the brief was Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

**YOUNG, J.**

Polk County brought this action to enjoin defendant from operating a rock quarry on his property. In September, 1978, the county zoned defendant's property AF, Agriculture - Forestry, a classification which does not permit mineral extraction. In 1979, following a period of substantial inactivity, extensive blasting, ripping and removal of rock began at one of defendant's quarry sites. The county thereafter filed its complaint for an injunction, alleging defendant's quarry operation was subject to the AF classification and unlawful in the absence of a conditional use permit. Defendant entered a general denial and affirmatively alleged that, at the time the present zoning ordinance was enacted, his was an existing lawful use which is still lawful under the AF classification as a nonconforming use. The county denied defendant's affirmative allegations and further alleged defendant's current use was an impermissible enlargement of his previous quarry use. The trial court denied the injunction. We review *de novo,* and reverse.

Defendant owns a 107 acre parcel of land on which there are four quarry sites. Most of the property is underlain with rock which could be quarried. For the last 40 years rock has been mined and crushed on a recurrent basis.

The land was first opened in 1939 when the Army Corps of Engineers, in need of rock for a large revetment project on the Willamette River, obtained permission from defendant's father to open a quarry site on the property. The Corps removed a substantial amount of rock to complete the project. Thereafter, for a period of about ten years, Polk County contracted for the right to remove and crush rock for its various road construction projects. Defendant's records show that more than 200,000 cubic yards of rock were removed in 1947 and 1948. Since that time, rock removal has been less substantial and more sporadic. From 1949 through 1978, roughly 345,000 cubic yards of rock were extracted. There was, however, no production for 14 of those years, and sales for the entire period amounted to only $23,300. Although defendant has constantly maintained stockpiles, the only nonproduction year

in which a sale was made was 1967. No production or sales occurred in 1978, the year of the zone change.

The fluctuations in production from defendant's quarry are explained by the nature of his business. Defendant does not actually operate the quarry; instead, the rock is extracted on a contractual basis by persons who own portable rock crushing equipment. They extract, crush and remove the rock for their own use, paying defendant a royalty for the amounts they take, and stockpiling the excess. Defendant owns no equipment and has made no capital improvements.

■■ The right to continue a use which does not conform to a newly enacted zoning ordinance is recognized by statute. Former ORS 215.130(4).[1] Nevertheless, nonconforming uses are not favored. *See Parks v. Tillamook Co. Comm./Spliid,* 11 Or App 177, 501 P2d 85 (1972), *rev den* (1973).

■■ The party asserting the nonconforming use carries the burden of proving it existed prior to enactment of the zoning ordinance. *Clackamas County v. Holmes,* 11 Or App 1, 501 P2d 333 (1972), *reversed* 265 Or 193, 508 P2d 190 (1973); 1 Anderson, The Law of Zoning, § 6.09 (1976). A use which has been abandoned prior to enactment of the ordinance cannot be claimed to be an existing use. *See Lane County v. Bessett,* 46 Or App 319, 612 P2d 297 (1980), *rev den* (1981). The immediate question presented by this appeal is whether defendant, by not engaging in quarrying activities at the time the AF zoning was adopted, abandoned his quarry use.

Two Oregon cases have directly addressed the problem of discontinuance of use in the context of nonconforming quarry operations. In *Bither v. Baker Rock Crushing Co.,* 249 Or 640, 438 P2d 988, 440 P2d 368 (1968), defendant had vastly increased the operation of a small quarry following enactment of a restrictive zoning ordinance, but then ceased production, selling only from stockpiles. Plaintiff sought an injunction, relying on an ordi-

---

[1] When this action was commenced, former ORS 215.130(4) provided:

"The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. * * *."

nance which prohibited re-establishment of a discontinued nonconforming use. The court found no discontinuance, stating:

"* * * [T]he evidence does not clearly support the finding that the rock quarry was discontinued or interrupted. Extensive crushed rock was stockpiled before the explosions and crushing stopped in May 1965. Sales of rock continued, and Mr. Baker testified that he had an intention of continuing the operation. There was no evidence to the contrary, except that crushing of rock ceased for a substantial period of time. This was not discontinuance of the business." 249 Or at 649.

In *Lane County v. Bessett, supra,* the owner purchased property from the United States Government and attempted to assert the government's nonconforming quarry use. We acknowledged that

"* * * quarry operations are by their nature sporadic, and a discontinuance or abandonment cannot be inferred from the mere fact blasting and crushing cease * * *, or from fluctuations in the volume of extractions or sales. * * *" 46 Or App at 326.

Nonetheless, we found the government had abandoned its use prior to the effective date of the zoning ordinance. The government had originally operated the quarry as a source of rock for construction of a dam and, after completion of that project, had no intention to conduct any future quarry operations on the property. Furthermore, less than 17,000 cubic yards of rock had been removed from the quarry during the ten year interim between the government's previous uninterrupted use and the zone change. We found this use to be insubstantial.

The present case presents a factual situation resting somewhere between those analyzed in *Bither* and *Bessett.* Here, defendant testified that he has always intended to continue operating his quarry. Although production has been sporadic, the quarry's 40 year history of production is consistent with this assertion. On the other hand defendant's actual use has been meager, and, for the five years preceding the present zoning, almost nonexistent. From 1974 through 1978, only 6,000 cubic yards of rock were removed with sales totaling less than $1,000. Defendant has made little, if any, capital investment, and he obviously has not promoted his business.

We must acknowledge that, by forming an intent to continue his business and by pursuing that business over a long period of time, defendant has committed his property to a use which, by its very nature, has continued to exist since inception. Even though we find no abandonment, we must nonetheless determine whether defendant's commitment deserves protection from restrictions placed on land use by the county's current zoning.

■   .   Continuation of nonconforming uses in Oregon is governed by the rationale of "vested rights." *See Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973). The policy underlying the notion of vested rights is basically one of fairness:

> "* * * The decisions are sometimes put on the ground that the owner has secured a 'vested right' in the particular use -- which is but another way of saying that the property interest affected by the particular ordinance is too substantial to justify its deprivation in light of the objectives to be achieved by enforcement of the provision. * * * Every zoning regulation, because it affects property already owned by individuals at the time of its enactment, effects some curtailment of 'vested' rights, either by restricting prospective uses or by prohibiting the continuation of existing uses. A regulation of the latter variety, however, almost always imposes substantial loss and hardship upon the individual property owner -- a loss much greater than that sustained by reason of a prospective use restriction only -- and that factor underlies the rule that we are discussing. The destruction of substantial businesses or structures developed or built prior to the adoption of a zoning ordinance is not deemed to be balanced or justified by the advantage to the public, in terms of more complete and effective zoning, accruing from the cessation of such uses. * * *.
>
> "* * * * *
>
> "* * * [E]xisting nonconforming uses will be permitted to continue, despite the enactment of a prohibitory zoning ordinance, *if, and only if, enforcement of the ordinance would, by rendering valueless substantial improvements or businesses built up over the years, cause serious financial harm to the property owner.* This rule, with its emphasis upon pecuniary and economic loss, is clearly inapplicable to a purely incidental use of property * * *." *People v. Miller,* 304 N. Y. 105, 106 NE 2d 34, 35-36 (1952). (Emphasis supplied.)

■ The requirement that the right of use be vested focuses on financial and economic commitment to a particular use. *See also, Clackamas Co. v. Port City Temple,* 13 Or App 459, 511 P2d 412, *rev den* (1973). We find no such commitment here. Defendant has maintained business records since 1947. Since that time his average annual income from the quarry has been approximately $1,045. During the last 20 years the average annual income was only $645, and it dropped to less than $200 for each of the five years immediately preceding the zone change. As previously mentioned, there is no evidence of capital improvement or investment. The result which we contemplate does not deprive defendant of all beneficial use of his property, and the hardship with which defendant is confronted is not significantly greater than that suffered by his neighbors. For these reasons,[2] we hold defendant has not proved a vested nonconforming use. An injunction should issue prohibiting defendant from extracting minerals from his land in the absence of a conditional use permit or an appropriate zone change.

Reversed.

No costs to either party.

---

[2] In *Clackamas Co. v. Holmes, supra,* the court was concerned with formulating a test for determining when a property owner acquires vested rights in partially completed construction. Because the court considered only improved uses of property, many of the factors identified there are inapplicable here. It is therefore more appropriate here to simply apply the general policy which underlies the requirement that the right of use be vested.