Argued and submitted May 6, reversed, trial court decree
reinstated December 2, 1981

# POLK COUNTY,
*Respondent on review,*

*v.*

# MARTIN,
*Petitioner on review.*

## (No. 26351, CA 17301, SC 27662)

636 P2d 952

M. Chapin Milbank, Salem, argued the cause for petitioner on review. With him on the petition and brief were Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem.

Dennis McCaffrey, Dallas, argued the cause and filed briefs for respondent on review.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, Tanzer and Campbell, Justices.

PETERSON, J.

Tanzer, J., concurring opinion.

### PETERSON, J.

This is an injunction case in which the plaintiff county asserts that the defendant's rock quarry is an unlawful land use under the county zoning ordinance. The defendant contends that his use is a permitted "nonconforming use,"[1] ORS 215.130(5). We allowed review to consider the relationship between a permitted nonconforming use and "the rationale of vested rights" discussed in the opinion below, 50 Or App 361, 366, 622 P2d 1152 (1981), and in our opinion in *Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973).

## I
## STATEMENT OF FACTS

We draw upon the Court of Appeals opinion for the facts of this case.

"Polk County brought this action to enjoin defendant from operating a rock quarry on his property. In September, 1978, the county zoned defendant's property AF, Agriculture-Forestry, a classification which does not permit mineral extraction. In 1979, following a period of substantial inactivity, extensive blasting, ripping and removal of rock began at one of defendant's quarry sites. The county thereafter filed its complaint for an injunction, alleging defendant's quarry operation was subject to the AF classification and unlawful in the absence of a conditional use permit. Defendant entered a general denial and affirmatively alleged that, at the time the present zoning ordinance was enacted, his was an existing lawful use which is still lawful under the AF classification as a nonconforming use. The county denied defendant's affirmative allegations and further alleged defendant's current use was an impermissible enlargement of his previous quarry use. The trial court denied the injunction. We review *de novo,* * * *.[2]

"Defendant owns a 107 acre parcel of land on which there are four quarry sites. Most of the property is underlain with rock which could be quarried. For the last 40

---

[1] As stated below, footnote 6, the term "nonconforming use" is not used in ORS 215.130(5), and is nowhere defined in ORS chapter 215. As used herein, the term is used in its descriptive sense to mean any use which does not conform with the zoning law. It may be a permitted use under ORS 215.130(5) by reason of lawful use prior to the enactment of a zoning law. *Compare Clackamas Co. v. Holmes,* 265 Or 193, 196-197, 508 P2d 190 (1973).

[2] We adopt the findings of fact of the Court of Appeals and limit our review to questions of law. ORS 19.125(4).

years rock has been mined and crushed on a recurrent basis.

"The land was first opened in 1939 when the Army Corps of Engineers, in need of rock for a large revetment project on the Willamette River, obtained permission from defendant's father to open a quarry site on the property. The Corps removed a substantial amount of rock to complete the project. Thereafter, for a period of about ten years, Polk County contracted for the right to remove and crush rock for its various road construction projects. Defendant's records show that more than 200,000 cubic yards of rock were removed in 1947 and 1948. Since that time, rock removal has been less substantial and more sporadic. From 1949 through 1978, roughly 345,000 cubic yards of rock were extracted. There was, however, no production for 14 of those years, and sales for the entire period amounted to only $23,300. Although defendant has constantly maintained stockpiles, the only nonproduction year in which a sale was made was 1967. No production or sales occurred in 1978, the year of the zone change.[3]

"The fluctuations in production from defendant's quarry are explained by the nature of his business. Defendant does not actually operate the quarry; instead, the rock is extracted on a contractual basis by persons who own portable rock crushing equipment. They extract, crush and remove the rock for their own use, paying defendant a royalty for the amounts they take, and stockpiling the excess. Defendant owns no equipment and has made no capital improvements.

"* * * * *.

"* * * Here, defendant testified that he has always intended to continue operating his quarry. Although production has been sporadic, the quarry's 40 year history of production is consistent with this assertion. On the other hand defendant's actual use has been meager, and, for the five years preceding the present zoning, almost nonexistent. From 1974 through 1978, only 6,000 cubic yards of rock were removed with sales totaling less than $1,000. Defendant has made little, if any, capital investment, and he obviously has not promoted his business.

"We must acknowledge that, by forming an intent to continue his business and by pursuing that business over a long period of time, defendant has committed his property to a use which, by its very nature, has continued to exist

---

[3] This statement is incorrect. The record shows that sales were made in 1978, as well as in 1977 and 1976.

since inception. Even though we find no abandonment, we must nonetheless determine whether defendant's commitment deserves protection from restrictions placed on land use by the county's current zoning." 50 Or App 363-366.

## II
## THE TRIAL COURT AND
## COURT OF APPEALS HOLDINGS

In a written opinion denying injunctive relief, the trial court stated:

"* * * [I]t is the conclusion of the court that a nonconforming use has been established, that such use has not been discontinued or abandoned, that such use may continue so long as it does not differ from previous use, and that plaintiff is not entitled to injunctive relief. * * *"

The Court of Appeals reversed, saying that the "* * * defendant has not proved a vested nonconforming use, * * *" 50 Or App at 367, and ordering that "* * * [a]n injunction should issue prohibiting defendant from extracting minerals from his land in the absence of a conditional use permit or an appropriate zone change."

As stated in footnote 2, we adopt the findings of fact of the Court of Appeals. The Court of Appeals' finding of "no abandonment" makes it unnecessary to consider the application of abandonment, either in the context of what is now ORS 215.130(7) (formerly ORS 215.130(6)), discussed below, or in the context of a use which, though predating the effective date of the zoning law, had been abandoned prior thereto. Nor does this case present the question of an enlarged use, such as was involved in *Bither v. Baker Rock Crushing Co.,* 249 Or 640, 438 P2d 988, 440 P2d 368 (1968).[4] The principal questions for decision are whether the evidence shows that a prior "lawful use" under ORS 215.130(5) has been established and whether there was an interruption of use under ORS 215.130(9) and under the zoning ordinance.

The plaintiff asserts that the defendant has no permitted nonconforming use because (a) the prior use was too sporadic and intermittent to give rise to any right to

---

[4] Note the text of the opinion of the trial judge that "such use may continue *so long as it does not differ from previous use* * * *." (Emphasis added.)

continue the use, (b) there was an interruption of use after the zoning law became effective, and (c) that the defendant's post-ordinance use of the land was an unauthorized "enlargement or prohibited increase of use." We do not consider the latter point. We limit our inquiry to points (a) and (b) because plaintiff's complaint made no claim of an enlarged use, the trial court apparently found no use in excess of the prior use, and because appropriate relief is available to the plaintiff or others if the defendant uses his land at a level in excess of the lawful use established under ORS 215.130(7).

## III
## NATURE OF NONCONFORMING USE AND CIRCUMSTANCES UNDER WHICH A NONCONFORMING USE MAY BE CONTINUED

Early in the history of zoning it became apparent that the attainment of tidy, homogeneous zones, however sound in theory, would be difficult of achievement because of existing usages of land which did not conform to the master plan and the unwillingness of the owners of such land to sacrifice their incompatible uses to the "greater good." The result was the decision by many legislative bodies to allow the continuation of existing uses as permitted nonconforming uses. The pattern of such legislation has been to protect existing uses, but such permitted uses are usually defined only in a general way, such as an "existing use" or "lawful use," leaving to the courts the responsibility to define the meaning of "existing use" on a case-by-case basis.

The result of such legislation and court decisions has been the development of a body of law which permitted nonconforming uses, if the right had "vested" prior to the enactment of the zoning legislation. The terms "vested right" and "existing use" were sometimes used interchangeably, but in either case the right to continue the nonconforming use turned upon such factors as (1) whether the use was actual and existing at the time the zoning restriction became effective, and (2) whether it was a substantial use. Once the landowner established the existence of a nonconforming use, it was often held that a "vested right" existed to continue such nonconforming use. Whether a vested right existed was largely determined by

usage. 3 Rathkopf, The Law of Zoning and Planning 58-1 to 58-8, ch 58 (4th ed 1981); 1 Anderson, American Law of Zoning, ch 6, §§ 6.01-6.10, pp 306-329; 82 Am Jur 2d Zoning and Planning 698, § 186.

The resolution of this case largely turns upon the application of what is now ORS 215.130(5),[5] which provides:

> "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. Alteration of any such use may be permitted to reasonably continue the use. Alteration of any such use shall be permitted when necessary to comply with any lawful requirement for alteration in the use. A change of ownership or occupancy shall be permitted."

Although both parties express the issue in terms of whether the defendant had a right to continue to use the property as a permitted nonconforming use, the term "nonconforming use" does not appear in ORS 215.130(5), and although it is referred to in ORS 215.130(9),[6] the term is nowhere defined in ORS chapter 215. The outcome therefore turns on whether the defendant's land, at the time the zoning ordinance was enacted, was then being lawfully used for the production of rock.

---

[5] Oregon Laws 1979, ch 610, § 1. What is now ORS 215.130(5) was formerly ORS 215.130(4) (Or Laws 1977, ch 766, § 5). The last substantive amendment of this statutory section, prior to 1977, was in 1963 Oregon Laws, chapter 619, section 9, which enacted former ORS 215.130(5). For ease of reference, all references are to 1979 statutes which, unless otherwise specified, are substantially identical, for the purposes of this case, with the 1977 statutes which were in effect when the zoning law was passed and when the case was tried.

[6] As noted in the text, the term "nonconforming use" is not defined in ORS ch 215. The term often appears in city or county zoning ordinances, and is sometimes defined in those ordinances in which case it means what the ordinance intends it to mean. As used herein, the term "permitted nonconforming uses" means a lawful use existing prior to the enactment of a zoning ordinance which, by reason of ORS 215.130(5), "may be continued."

ORS 215.130(9) provides:

"(9) As used in this section, 'alteration' of a nonconforming use includes:

"(a) A change in the use of no greater adverse impact to the neighborhood; and

"(b) A change in the structure or physical improvements of no greater adverse impact to the neighborhood."

There is no claim that the defendant's use of the land for a rock quarry, prior to the enactment of the zoning ordinance, was not lawful. Apparently such use was permissible under the then-existing law. The evidence shows that the defendant had committed the property to this use, that he had made no other substantial use of the property, and that he intended to continue to so use the property on the same sporadic and intermittent basis. The Court of Appeals acknowledged that "* * * by forming an intent to continue his business and by pursuing that business over a long period of time, defendant has committed his property to a use which, by its very nature, has continued to exist since inception. * * *" 50 Or App at 366.

■ ■ The determinative factor under ORS 215.130(5) is lawful use. Matters concerning frequency of use or intensity of use bear more on the nature and extent of use rather than upon the lawfulness of the use. A sporadic and intermittent use is sporadic and intermittent, but it may nonetheless be a "lawful use" under ORS 215.130(5). The nature and extent of the prior lawful use determines the boundaries of permissible continued use after the passage of the zoning ordinance. The significant thing is that a sporadic and intermittent use may give rise to a permitted nonconforming use, with the extent of the permitted nonconforming use limited to the sporadic and intermittent use that existed prior to the enactment of the zoning ordinance. *See* footnote 4, *supra.* The Court of Appeals was careful to note, 50 Or App at 365, quoting from *Lane County v. Bessett,* 46 Or App 319, 326, 612 P2d 297 (1980), that:

" "* * * [Q]uarry operations are by their nature sporadic, and a discontinuance or abandonment cannot be inferred from the mere fact blasting and crushing cease * * *, or from fluctuations in the volume of extractions or sales. * * *' "

The plaintiff claims that continued use of the property for a quarry is barred by ORS 215.130(7), which provides:

"(7) Any use described in subsection (5) of this section may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption."

and by section 114.050 of the county zoning ordinance, which provides:

"*** In case the nonconforming use of land where no building is involved ceases for a period of 30 days, then such land shall be subject to all the regulations specified for the zone in which the land was located. ***"

Our holding in *Bither v. Baker,* 249 Or 640, 438 P2d 988, 440 P2d 368 (1968), is in point and is dispositive. There, prior to 1961, a small rock quarry was operated on a parcel of property. Defendant acquired the property in March, 1961, and increased the operation. A zoning ordinance was adopted in 1962. But for the previous use, the operation of the quarry would not have been permitted. The evidence (as in the case at bar) was that after the zoning law became effective, there were periods of time when no mining or crushing of rock occurred, although rock stockpiling and rock sales continued. We quote from page 649 of the opinion:

"Defendant says the trial court erred in finding there was a discontinuance of use by defendant under the zoning ordinances.

"The zoning ordinance for Washington County makes defendant's operation nonconforming in this area. It states:

'If a nonconforming use is discontinued for any reason for more than six (6) months, it shall not be re-established ***.' Section 2004-1, Zoning Ordinance for Washington County.

"The authority for this provision, and the limit of its restrictiveness, is ORS 215.130(5):

"*** [S]uch nonconforming uses shall not be increased, changed or resumed after a period of interruption or abandonment ***.'

"The statute leaves to the ordinance a further definition of what is an interruption or abandonment. The discontinuance provision quoted from the ordinance appears to fall reasonably within the authority of the statute. However, the evidence does not clearly support the finding that the rock quarry was discontinued or interrupted. Extensive crushed rock was stockpiled before the explosions and crushing stopped in May 1965. Sales of rock continued, and Mr. Baker testified that he had an intention of continuing the operation. There was no evidence to the contrary, except that crushing of rock ceased for a substantial period of time. This was not discontinuance of the business."

On rehearing, the court held that because of the prior lawful use, continued operation of the quarry was permissible even though the quarry activities were not permitted under the ordinance, but that the defendant would be enjoined from "* * * any rock quarrying or crushing activities which constitute an increase over the volume or level that existed at the time of adoption of the interim zoning ordinance." 249 Or at 654.

■ Here, as in *Bither v. Baker, supra,* rock was continuously stockpiled on the land, sales were made from time to time, and rock was quarried and crushed from time to time. As observed by the trial court, "* * * the product was always available and always being offered for sale." The Court of Appeals expressly found that there was no abandonment, and its opinion indicates that the court believed that "the fluctuations in production * * * are explained by the nature of his business," 50 Or App at 364, and that there was no interruption of use, either before or after the zoning ordinance became effective. 50 Or App at 365. The land had been used in the same manner for over 30 years. There was continuous use in the sense that stockpiling existed and the owner had committed the property to that use. Even though the sales were not substantial, rock was available for sale and sales were periodically made. The same is true of the quarrying. There was no interruption of the use within the meaning of ORS 215.130(7) or under the ordinance itself.

Other jurisdictions have permitted nonconforming uses when the prior use was sporadic or intermittent; and even when the prior use entirely ceased from time to time. *See Landay v. Zoning Appeals Board,* 173 Md 460, 196 A 293 (1938) (junk shop empty and unused for several years prior to enactment of zoning ordinance); *Borough of Saddle River v. Bobinski,* 108 NJ Super 6, 259 A2d 727 (1969) (stabling of horses permitted in barn even though the barn was not used for any purpose for 27 years); *Peacock Twp v. Panetta,* 81 Mich App 733, 265 NW2d 810, 813 (1978) (intermittent use for camping held to authorize use "* * * in accordance with their past practices as a prior nonconforming use"); *Civic Association v. Horowitz,* 318 Mich 333, 28 NW2d 97 (1947) (prior use of property for carnival gave

rise to permitted nonconforming use even though prior use was seasonal).

The basis for the Court of Appeals holding appears to be that in the absence of any capital improvement or investment by the landowner, there could be no "vested nonconforming use," for the court stated:

"The requirement that the right of use be vested focuses on financial and economic commitment to a particular use. *See also, Clackamas Co. v. Port City Temple,* 13 Or App 459, 511 P2d 412, *rev den* (1973). We find no such commitment here. Defendant has maintained business records since 1947. Since that time his average annual income from the quarry has been approximately $1,045. During the last 20 years the average annual income was only $645, and it dropped to less than $200 for each of the five years immediately preceding the zone change. As previously mentioned, there is no evidence of capital improvement or investment. The result which we contemplate does not deprive defendant of all beneficial use of his property, and the hardship with which defendant is confronted is not significantly greater than that suffered by his neighbors. For these reasons, we hold defendant has not proved a vested nonconforming use. An injunction should issue prohibiting defendant from extracting minerals from his land in the absence of a conditional use permit or an appropriate zone change." (Footnote omitted.) 50 Or App at 367.

Although the defendant's financial commitment was virtually nil in the sense that there was little or no capital improvement or investment by the defendant beyond the cost of the land, a lawful use of property can exist without substantial additional capital investment. Although the development of property often involves capital improvement or investment, the sole criterion in the statute is "lawful use." There is no claim that the defendant's prior use was not lawful. Nor is there any dispute that the use was achieved without the commitment of substantial capital expenditures. Nor is there any dispute that the property was committed to this use and was so used, albeit on a sporadic and intermittent basis, under circumstances where the intensity of use would fluctuate.

The defendant's failure to personally commit substantial sums toward the development of the land in no way detracts from the *use* to which the land was committed.

Once a nonconforming lawful use is shown to exist, there is no requirement of "financial and economic commitment to a particular use" beyond that necessary to create the initial nonconforming use.

The Court of Appeals based its holding on the premise that "[c]ontinuation of nonconforming uses in Oregon is governed by the rationale of 'vested rights,'" citing *Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973). *Holmes* is not in point. *Holmes* concerns the degree of development which must exist before an owner of partially developed property can be said to have established a "lawful use" of property under the statutes, so as to use the property as intended even though the use would not be permitted under the zoning law which became effective while the property was being improved. In *Holmes,* the landowners spent $33,000 to search for a plant site, drill wells, install pumps and arrange for special electrical and irrigation systems incident to the development of the property for a chicken-processing facility. Clackamas County subsequently adopted a zoning ordinance which prohibited construction of the plant. The landowners nonetheless proceeded with construction, and Clackamas County sued to enjoin further construction. It was held:

"'* * * When the development has reached a certain stage, the property owner is said to have acquired a "vested right" to continue the development and subsequently to put the use to its intended function. The point in the development of the use at which time the property owner is said to have acquired a "protected use" or "vested right" is not easily defined * * *.' Comment, 22 SC L Rev 833, 839 (1970)." 265 Or at 197.

The opinion lists tests which determine whether a landowner "* * * has developed his land to the extent that he has acquired a right to continue the development * * *." 265 Or at 198-199. The court found that the tests were met and held that the landowners "acquired a vested right to complete the construction," 265 Or at 197, 201,[7] a vested

---

[7] In a subsequent decision, the Court of Appeals followed *Holmes,* restating the rule as follows:

"The Supreme Court in *Holmes* identified four essential factors to be considered in asserting *the evidence of a nonconforming use;* (1) the ratio of prior expenditures to the total cost of the project, (2) the good faith of the landowner in

making the prior expenditures, (3) whether the expenditures have any relationship to the completed project or could apply to various other uses of the land, and (4) the nature of the project, its location and ultimate cost. None of these factors is predominant; they are merely guidelines in assessing the evidence and deciding the issue." (Emphasis added.) *Eklund v. Clackamas County,* 36 Or App 73, 81, 583 P2d 567 (1978).

*See also,* Cable & Hauck, *"The Property Owner's Shield—Nonconforming Use and Vested Rights,"* 10 Will L J 404, 411-412 (1974). The authors discuss the Oregon authorities and draw these distinctions between a nonconforming use and a vested right:

"With these authorities in mind, it can be fairly stated that the most important considerations in determining the existence of a nonconforming use in Oregon are:

"(1) Actual employment of the property;

"(2) For a definable or definite purpose [e.g., restaurant, gas station, apartment complex, etc.]; (Original brackets.)

"(3) In a lawful manner;

"(4) Prior to the passage of an ordinance or regulation which renders the prior use 'nonconforming.'

"If these factors are proven, the use may be continued for the normal and foreseeable life of the use regardless of the governing body's subsequent zoning regulation. However, the use cannot be expanded without the permission of the governing authority. The structures necessary to the use must be maintained. The property owner must not discontinue the use for an unreasonable period of time or he will be found to have abandoned or waived the use. Once abandoned, the use may not be reestablished.

"The factors relevant to a 'vested right' are:

"(1) The good faith of the property owner in making expenditures to *lawfully* develop his property in a given manner; (Original emphasis.)

"(2) The amount of notice of any proposed re-zoning;

"(3) The amount of reliance on the prior zoning classification in purchasing the property and making expenditures to develop the property;

"(4) The extent to which the expenditures relate more to the nonconforming use than to the conforming uses;

"(5) The extent of the nonconformity of the proposed use as compared to the uses allowed in the subsequent zoning ordinances;

"(6) Whether the expenditures made prior to the subsequent zoning regulation show that the property owner has gone beyond mere contemplated use and has committed the property to an actual use which would in fact have been made but for the passage of the new zoning regulation;

"(7) The ratio of the prior expenditures to the total cost of the proposed use.

"If the evidence relevant to these factors establishes a 'vested right,' the property owner may complete his improvements and thereafter use his property in a manner which is a nonconforming use, subject to the restrictions on nonconforming uses discussed above."

right which turned not on existing use (for there was no existing use at the time of the legislation), but upon the extent of development in preparation for an intended future use.

Unlike *Clackamas Co. v. Holmes, supra,* which turned on the degree of development, the resolution of this case turns on the extent of use prior to the passage of the zoning law. Neither ORS 215.130 nor *Clackamas Co. v. Holmes, supra,* require that anything beyond the requirements of present ORS 215.130(5) be shown in order for a landowner to have the right to continue *use* of property in the same condition and at the same level as was the case at the time of the enactment of the zoning legislation. We hold that defendant has established an existing lawful use under ORS 215.130(5) which has been neither abandoned (ORS 215.130(7)) nor interrupted (ORS 215.130(7) and section 114.050 of the county zoning ordinance).

Reversed. Trial court decree reinstated.

Tanzer, J., filed a concurring opinion.

**TANZER, J.,** concurring.

I concur in the opinion of the majority, as far as it goes. There are two holdings which are implicit in that opinion and I concur based on my understanding of those holdings.

First, I take it that the majority holds that the existing use is not deemed interrupted under section 114.050 of the zoning ordinance, because ORS 215.130(5) and (7) allow intermittent uses and an ordinance cannot diminish the statutorily recognized use by converting intermittency into interruption. I agree. The language of *Bither v. Baker Rock Crushing,* 249 Or 640, 438 P2d 988, 440 P2d 368 (1968), which suggests to the contrary, is overly broad.

Second, the decree is upheld expressly because it recognizes the existing use, as the trial court opinion put it, only "so long as it does not differ from previous use." That limitation is essential but it is not spelled out more fully in the decree or by the majority. So there may be no misunderstanding, it is better that the level of activity permitted as an existing use should be addressed.

The quarry was operated from 1947 to 1978, when the zoning ordinance was enacted. There was an initial heavy usage which has never been resumed or repeated, *i.e.,* in 1947 and 1948, 200 cubic yards of rock were removed. There was production in only 15 of the following 29 years, totaling 345,000 cubic yards for total sales of $23,300. That computes to average production and sales of under 12,000 cubic yards and $803 per year. For the five years immediately preceding the zoning ordinance, the level of activity was further reduced: under 6,000 cubic yards of rock were removed for sales of less than $1,000, averaging under 1,200 cubic yards and under $200 per year.

These facts describe an intermittent use which was steadily diminished in three stages of activity. The judicial recognition of an existing intermittent use cannot revive the level of activity over 30 years before. The 1947-1948 level was not intermittent; it was a single transaction. The second and third periods of activity were intermittent. The five-year period which preceded the zoning is a substantial period of time by which to measure the level of the existing use on the date of zoning. As in *Bither,* people in the zone should be subjected to no greater level of explosions and other activity than in the preceding five years. Nor should the land be rendered increasingly less capable of conversion to permitted uses at a rate greater than that of the preceding five years. Therefore, I conclude that the decree should be understood to permit use at the level of the five years preceding the zone enactment, *i.e.,* a level of removal no greater than 1,000 cubic yards during any five-year period.

The majority does not address the issue of the magnitude of the existing lawful use because, I take it, no such issue was made below. Hence, the question is left open. I would answer it.