Argued and submitted November 17, 1982, resubmitted In Banc February 9,
affirmed June 22, reconsideration denied September 9,
petition for review allowed November 15, 1983 (296 Or App 56)
See 297 Or 129, 681 P2d 786 (1984)

FORMAN et al,
*Appellants,*
*v.*
CLATSOP COUNTY et al,
*Respondents.*

(CC-82-156; CA A24527)

665 P2d 365

Nicholas D. Zafiratos, Astoria, argued the cause for appellants. With him on the briefs was Zafiratos & Roman, Astoria.

Timothy V. Ramis, Portland, argued the cause for respondents Sports Acres, Inc., Milton O. Brown and Raymond Kittleson. With him on the brief was O'Donnell, Sullivan & Ramis, Portland.

No appearance for respondent Clatsop County.

WARREN, J.

Buttler, J., dissenting.

Rossman, J., dissenting.

## WARREN, J.

Plaintiffs filed an action in circuit court for a declaratory judgment, seeking to overturn the decision of Clatsop County (County) that Sports Acres, Inc., Milton Brown, and Raymond Kittleson (defendants) had a vested right to continue a nonconforming use. The trial court granted defendants' motion to dismiss on the ground that it lacked jurisdiction to hear the complaint, because the Land Use Board of Appeals (LUBA) had exclusive jurisdiction to review the County's nonconforming use decision. We affirm.

In 1978, defendants purchased Sports Acres, a 50-acre complex consisting of a swimming pool, tennis courts, tracks and athletic fields. Shortly thereafter, defendants acquired an option to purchase 228 additional acres to develop for recreational vehicle and tent camping sites. After the Clatsop County Planning Commission determined that defendants' intended use was permitted under the then existing zoning ordinance, defendants purchased and began developing the property. In 1980, the County adopted a new zoning ordinance that prohibited defendants' intended use of the property. Defendants sought a resolution from the County that they had a vested right to their nonconforming use of the property. Plaintiffs, owners of property across the river from Sports Acres, opposed the resolution. After a public hearing, at which the County Commission heard arguments and received exhibits, it issued findings of fact and conclusions of law and determined that defendants had a vested right to continue their nonconforming use.[1]

Plaintiffs appealed the County's resolution to LUBA and also initiated this action for declaratory judgment in circuit court. LUBA dismissed the appeal on the ground that it lacked jurisdiction, because the circuit court had primary jurisdiction to decide vested rights issues. Plaintiffs did not appeal LUBA's decision. The circuit court dismissed the complaint, concluding that LUBA had exclusive jurisdiction to review vested rights determinations of local governments.

The issue here is what forum has jurisdiction to determine the existence of a vested right to a nonconforming use.

---

[1] No issue has been raised as to whether the procedures employed by the County in making its vested right determination complied with the requirements of due process.

We hold that LUBA was the only forum in which plaintiffs could have contested the County's determination that defendants had a vested right to continue their nonconforming use.

LUBA has "exclusive jurisdiction to review any land use decision of a local government * * *." Or Laws 1979, ch 772, § 4(1) (as amended). ORS 197.015 defines the term "land use decision":

"* * * * *

"(10)    'Land use decision' means:

"(a)    A final decision or determination made by a local government or special district that concerns the adoption, amendment or *application of:*

"* * * * *

"(C)    *A land use regulation;*

"* * * * *

"(11)    *'Land use regulation' means any local government zoning ordinance,* land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan. 'Land use regulation' does not include small tract zoning map amendments, conditional use permits, individual subdivision, partitioning or planned unit development approvals or denials, annexation, variances, building permits and similar administrative-type decisions." (Emphasis supplied.)

There is no question that the decision was final and was made by a local government. Further, the County's determination that defendants had a vested right to continue a nonconforming use was a "land use decision" within the meaning of ORS 197.015. The decision concerned the application of a land use regulation, because the purpose of the County's vested right determination was to resolve whether the local government zoning ordinance would be applied to bar defendants' intended use of the property. The County decided that a vested right exists, so it did not apply the ordinance and allowed defendants to continue their nonconforming use. Lastly, the County's decision was not similar to those administrative-type decisions excluded from the definition of a "land use regulation." To determine whether defendants had a vested right to continue a nonconforming use, the County made findings of fact and applied those facts to a set of judicially-established guidelines. *See Cook v. Clackamas County,*

50 Or App 75, 622 P2d 1107, *rev den* 290 Or 853 (1981). The substance of the County's vested right determination was quasi-judicial rather than administrative.

■        Plaintiffs rely on three cases for the propositions that local governments lack the power to declare the existence of a vested right to a nonconforming use and that the circuit court has primary jurisdiction over vested right issues: *Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976), *rev den* 278 Or 157 (1977); *1000 Friends of Oregon v. Clackamas Co. Comm.,* 29 Or App 617, 564 P2d 1080 (1977); *Eklund v. Clackamas County,* 36 Or App 73, 583 P2d 567 (1978). These cases were decided before the creation of LUBA. Even before LUBA was established, we recognized that the local government's vested right determination was "not a nullity" but was "valid and binding unless and until a contrary decision [was] made by some other tribunal, such as the circuit court." *1000 Friends of Oregon v. Clackamas Co. Comm., supra,* 29 Or App at 620. When it created LUBA, the legislature infused the vested rights decisions of local governments with more vitality by establishing "some other tribunal," LUBA, to review land use decisions and by providing for judicial review of LUBA decisions by this court. Or Laws 1979, ch 772 § 6a (as amended). Therefore, the circuit courts no longer have "primary" jurisdiction over vested rights issues.

■■        Nothing in the legislation creating LUBA expressly or impliedly precludes the circuit courts from exercising original jurisdiction over declaratory judgment actions to decide vested rights issues raised initially in that forum. The circuit courts' decisions are reviewable by this court. However, when a vested rights issue is submitted to and finally decided by a local government, LUBA has exclusive jurisdiction to review that issue arising in that forum. The original vested right determination can be made by either the the local government in the context of determining the application of a zoning ordinance or by the circuit court but not both.

■        Here, once the County decided the vested rights issue, the circuit court lacked jurisdiction over plaintiffs' suit for a declaratory judgment. Plaintiffs' remedy after an adverse decision from the Board was to appeal to LUBA, which they did, and to appeal an adverse decision from LUBA to us, which they failed to do. To the extent that *Eagle Creek Rock Prod. v.*

*Clackamas Co., supra, 1000 Friends of Oregon v. Clackamas Co. Comm., supra,* and *Eklund v. Clackamas County, supra,* are contrary to this decision, they are overruled.

Affirmed.

**BUTTLER, J.,** dissenting.

Although I join in Judge Rossman's dissent, something more needs to be said about the substantive and procedural effects of the majority's effective overruling of *Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976), *rev den* 278 Or 157 (1977); *1000 Friends of Oregon v. Clackamas Co. Comm.,* 29 Or App 617, 564 P2d 1080 (1977), and *Eklund v. Clackamas County,* 36 Or App 73, 583 P2d 567 (1978). All of those cases hold that a determination whether a person has a vested property right to use his property in a certain way because the use is a preexisting nonconforming use (ORS 215.130(5)) must be made by a court of record, namely, the circuit court.

Obviously, such a determination involves the use of land; in that sense, it is a land use decision. However, such a use of land is one that the local governing body may not prevent solely by enacting a zoning ordinance that does not permit that use. The use may not be prevented because of the vested nature of the right that inheres in the property; it is a right that may be transferred along with the property. The primary determination relates to a property right; after that decision is made, a land use decision may follow.

The majority now hold that a determination that such a vested property right exists or does not exist may be made by a "resolution" adopted by a local political body comprised of laymen, which is not a judicial body, much less a court of record. The thought of such a body's determining vested property rights is reminiscent of a Gilbert and Sullivan comic opera: there are no rules of evidence, no right of cross-examination, and anyone in the neighborhood who may be interested may "remonstrate" and argue for or against the resolution of the question. In this case, the commissioners summarized their proceeding and deliberations as follows:

> "At the time of the hearing, the Board heard arguments of the applicants, received *a memorandum in support of* vested

right determination and numerous exhibits that were introduced at the time of the hearing. Further, the Board heard the objections and remonstrances of property owners in the vicinity of the area proposed for consideration. Based upon substantial evidence presented by such exhibits, the memorandum in support of vested right determination and the oral argument presented at the time of the hearing, and based further upon the Board's specific review of the documentation submitted as evidence, the Board finds:" (Emphasis supplied.)

If the majority are right, LUBA, an agency, not a court, is limited on review to a determination whether the local body's findings of fact are supported by substantial evidence; if so, it is bound by them. Although LUBA has limited authority under Oregon Laws 1979, chapter 772, section 4(7) (*amended by* Or Laws 1981, ch 748, § 61) to take evidence on disputed allegations relating to unconstitutionality, standing and *ex parte* contracts, its review in this kind of case is confined to the record. We, in turn, would review LUBA's decision on the same basis. If, on the other hand, we adhere to our prior decisions holding that the circuit court has primary jurisdiction to determine the existence or nonexistence of such a vested property right, rules of evidence would be applicable, the parties would be entitled to cross-examine witnesses, compulsory process for the attendance of witnesses would be available, the parties would be able to object to the admissibility of evidence, "remonstrators and objectors" could not clutter the record with irrelevant considerations, and we would review the trial court decision *de novo. See Webber v. Clackamas County,* 42 Or App 151, 600 P2d 448, *rev den* 288 Or 81 (1979).[1]

In my opinion, vested property rights should be determined in that context, as they always have been. Once those rights have been determined by the courts, the local governing body will know whether it may or may not apply its "land use regulation" to the property in question.

The majority say that, somehow, the creation of LUBA gave local governing bodies authority they did not have before. The opinion states:

---

[1] If the plaintiff seeks mandamus in the circuit court, we would review it as an action at law. *Cook v. Clackamas County,* 50 Or App 75, 622 P2d 1107, *rev den* 290 Or 853 (1981).

"* * * When it created LUBA, the legislature infused the vested rights decisions of local governments with more vitality by establishing 'some other tribunal,' LUBA, to review land use decisions and by providing for judicial review of LUBA decisions by this court. Or Laws 1979, ch 772 § 6a (as amended). Therefore, the circuit courts no longer have primary jurisdiction over vested rights issues." 63 Or App at 621.

To the contrary, a principal purpose in the creation of LUBA was to transfer what had been circuit court review of land use decisions by writ of review to LUBA. Because decisions involving vested property rights based on a preexisting nonconforming use were not reviewable by writ of review, *Eagle Creek Rock Prod. v. Clackamas Co., supra,* neither are they reviewable by LUBA.

Because I would reverse the dismissal of this declaratory judgment proceeding, I dissent.

Richardson and Young, JJ, join in this dissent.

**ROSSMAN, J.,** dissenting.

Through a process more akin to alchemy than to analysis, the majority concludes that the creation of LUBA somehow constituted an affirmative grant of primary jurisdiction to local governments to determine the existence of a nonconforming use. That conclusion overrules a series of decisions by this court that local governments have no such power and creates an unnecessary dual system of jurisdiction that I am convinced the legislature did not intend. In my opinion, the majority missed the boat at the outset and still waits at the wrong pier. Accordingly, I dissent.

For the reasons set out below, I believe that the majority's decision in this case is plainly wrong.

*A nonconforming use is a property right, the existence of which is to be adjudicated in the circuit courts.*

The right to continue a nonconforming use is a property right established by statute. ORS 215.130(5). Primary jurisdiction to determine the existence of the right lies in the circuit courts, and the courts' primary jurisdiction may *not* be ousted by any local government proceeding. *See 1000 Friends of Oregon v. Clackamas Co. Comm.,* 29 Or App 617, 564 P2d

1080 (1977); *Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976), *rev den* 278 Or 157 (1977).

Thus, just as the courts have primary jurisdiction to adjudicate the existence and extent of other interests in real property, they have that authority in cases like this one. Furthermore, because of the uniqueness of real property, the importance of real property interests and the complex issues often arising when those interests are in dispute, the courts have traditionally provided the forum for the final resolution of such questions. *See generally Polk County v. Martin,* 292 Or 69, 636 P2d 952 (1981). The majority's ruling that a different approach is to be taken in nonconforming use cases is unconvincing and not supported by authority.

*LUBA has jurisdiction to review only those decisions local governments have the authority to make.*

The creation of LUBA established a forum for the *review* of certain local government decisions that previously had been subject to the writ of review process. *See* ORS 34.020 and Or Laws 1979, ch 772, §§ 4 to 6, as amended by Or Laws 1981, ch 748, §§ 35 to 36a. The majority has identified no provision in the statutory scheme establishing LUBA that either divests circuit courts of their power to adjudicate nonconforming use cases or confers on local governments the primary jurisdiction to make those decisions. The creation of LUBA *per se* does not have that effect. Nevertheless, the majority holds that the creation of LUBA, through some unstated and obviously mysterious process, somehow "infused" local governments with authority they clearly did not have before.

The majority's assertion that the county's nonconforming use decision in this case is a "land use decision" and, therefore, is reviewable by LUBA, simply begs the question it is offered to prove, *i.e.,* that local governments *can* make a *"final* decision" on *this* question. If the majority is correct, a person who lives in a garage is a car.

In my opinion, ORS 197.015(10), defining "land use decision," simply provides that local government "land use decision[s]" that were previously subject to writ of review are now reviewable only by LUBA. ORS 197.015(10) does *not*

expand the authority of local government to make those decisions. LUBA cannot review a final decision a local government has no authority to make. Indeed, in this case, LUBA recognized that limitation, stating that "[t]he proper place to appeal Clatsop County's 'voidable' decision that a vested right exists is to the Circuit Court, not to this Board." Furthermore, the majority's summary treatment of the question whether this matter comes under one of the exceptions in ORS 197.015(11), which includes "conditional use permits * * * and similar administrative-type decisions," states the issue but in no way resolves it.

Here, a local government made a specific finding of vested rights. It clearly had no legal authority to do so. It has never had such authority. To this day, the legislature has not conferred such authority — regardless of the majority's contortions to infer something to the contrary. Perhaps the future will bring us the law that the majority would like to see, but we must be mindful that it is only the legislature that operates such a delivery service. It is not the function of this court to redefine the jurisdiction of the circuit courts of this state.

Finally, it should be noted that application of the majority's new rule in this case achieves a strange result. Plaintiffs initiated this action for declaratory judgment and also appealed the county's resolution to LUBA. Approximately one month after the court dismissed the declaratory judgment action, LUBA dismissed the appeal on the ground that it lacked jurisdiction. Thus, plaintiffs are left stuck in the middle of a road that deadends in both directions.

For all these reasons, I believe that the circuit court is and should be the proper forum in which to adjudicate the question presented in this case and would decide the appeal on that basis.

Richardson, Buttler and Young, J.J., join in this dissent.