Argued and submitted July 17, reversed and remanded for reconsideration
September 9, 1992

## Hans HENDGEN
and Shauna Hendgen,
*Petitioners,*

*v.*

## CLACKAMAS COUNTY,
*Respondent.*

(LUBA 92-038; CA A75291)

836 P2d 1369

John W. Shonkwiler, Tigard, argued the cause and filed the brief for petitioners.

David W. Anderson, Assistant County Counsel, Oregon City, argued the cause for respondent. On the brief were Gloria Gardiner, Assistant County Counsel, and Clackamas County Counsel, Oregon City.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Clackamas County denied petitioner's application for a determination that they enjoy a nonconforming use for two buildings on their property and for a change of the use. LUBA affirmed. Petitioners seek review, and we reverse.

We take the facts from LUBA's opinion:

"The subject property consists of 267 acres and is zoned General Agricultural District (GAD), an exclusive farm use zone. Zoning was first applied to the subject real property on December 14, 1967. Under the first zoning ordinance applied in 1967 and all subsequent zoning provisions applicable to the subject property, commercial warehouse use of the property was and is prohibited.

"The subject property is improved with a number of structures. The dispute in this appeal concerns two of these structures * * *. Historically, these two structures were used in conjunction with other businesses located on the property, for storage of materials used in and products sold by those businesses.

"Between 1967 and 1969, the two structures were used to store 'nonagricultural products' in connection with various business ventures conducted on the property. Over time, the nature of those businesses changed and, consequently, so did the nature of the products stored in the two structures. From 1969 to 1984, the businesses that utilized the two structures primarily sold commercial pellet feeds. In addition, in 1977, a soil amendment business was started on the property and the two structures were used to store products connected with that business. On August 31, 1989, the soil amendment business declared bankruptcy and ceased operations. The two structures containing the soil amendment business' supplies and inventory sat idle until December, 1990 when the stored contents were sold by the bankruptcy trustee. In addition, in December, 1990, the subject real property was sold to petitioners. Petitioners desire to use the two structures as warehouses for storage of the cedar fencing products of an off-site business, and not for the purpose of storing supplies or inventory associated with an ongoing business located on the subject property."

LUBA reasoned that, if any nonconforming uses had been shown to exist at the time that the restrictive zoning took effect in 1967, it was for the storage of the materials and inventory of businesses that operated on the premises and the

storage was only incidental to the operation of the businesses. That use differed, according to LUBA, from petitioners' proposed rental of the buildings to an off-premises business for the sole purpose of commercial warehousing and storage. Therefore, LUBA concluded that petitioners' proposed use was not the same as the ones that took place in the structure at the time of the preclusive zoning and after and that, therefore, the proposed use does not enjoy nonconforming use status. LUBA also concluded that, because the business operations on the premises had ceased in August, 1989, *any* nonconforming use that might have existed had been abandoned for more than 12 months and was, therefore, deemed terminated under the applicable provision of the county zoning ordinance, although the owner's goods and inventory remained in the structures.

■ If the issue came from the opposite direction, LUBA's reasoning would be correct. On-premises sales and other business activities would not come within the scope of an existing nonconforming use that consisted only of storage. However, the converse does not necessarily follow. The common nucleus of both activities *is* storage. Short of the point that it is abandoned or discontinued, the intensity of a nonconforming use may be reduced without its being lost, *Polk County v. Martin*, 292 Or 69, 636 P2d 952 (1981); *Bither v. Baker Rock Crushing*, 249 Or 640, 438 P2d 988, 440 P2d 368 (1968); *see also Warner v. Clackamas County*, 111 Or App 11, 824 P2d 423 (1992), although the use may not be enlarged except through the alteration process under ORS 215.130 and complying local law. *See Parks v. Tillamook Co. Comm./ Spliid*, 11 Or App 177, 501 P2d 85 (1972), *rev den* (1973).

We do not imply that the present proposed use is *necessarily* less intensive than the earlier ones described by LUBA. The process of moving the goods to and from storage and other factors may bear on that question. Conceivably, the precise dynamics of the past and the proposed new operations may reveal that a fundamental change in the nature of the use would occur. However, we do not agree that the differences to which LUBA's present opinion points between the previous and proposed operations mean that the latter entail a departure from the established use and are not viable as a matter of law. The abandonment issue, in turn, depends on

the answer to the first question. To the extent that simple storage was part of any nonconforming use that the previous owners were conducting and that storage continued after they ceased business operations, then we are unable to agree that the cessation of the on-premises businesses was an abandonment of the storage use.

In sum, LUBA regarded the nature of the businesses that employed the structures to be the decisive inquiry. We think that the more relevant question is whether there is a common use that the various operations share.

Petitioners made three assignments to LUBA besides the ones that we have discussed: that there was no substantial evidence supporting the county's finding that the exact nature of the use in effect at the time of zoning was unknown; that the county erred in finding that some of the activities that were conducted after the restrictions were enacted were outside the scope of the original nonconforming use and had not been authorized by other means; and that it erred in concluding that petitioners were not entitled to a change of the use. Given the grounds for its holding, LUBA concluded that the first of those assignments was nondispositive and that the other two did not require decision. The three assignments assume greater significance in the light of our disposition of the others.

Reversed and remanded for reconsideration.