Argued and submitted April 19, reversed and remanded with instructions
May 19, 1993

Dale RHINE,
*Petitioner,*

*v.*

CITY OF PORTLAND,
*Respondent.*

(92-106, 92-189; CA A78834)

852 P2d 874

Jacob Tanzer, Portland, argued the cause for petitioner. With him on the brief was Ball, Janik & Novack, Portland.

Kathryn Beaumont Imperati, Senior Deputy City Attorney, Portland, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Petitioner seeks review of LUBA's affirmance of the City of Portland's (city) decision that petitioner's nonconforming use for the operation of a reprographics, blueprint and printing business had been discontinued for two years, beginning in May, 1987, and was therefore terminated under Portland City Code (PCC) 33.258.050.D.1 (ordinance):

> "If the site of a nonconforming use is vacant for 2 continuous years, the nonconforming use rights are lost and the reestablishment of a nonconforming use is prohibited. If the site is vacant for less than 2 continuous years, the nonconforming use rights are maintained."

Petitioner's only assignment of error states:

> "LUBA erred in affirming the City Council order denying petitioner's application for establishment of a nonconforming use."

Under that assignment, he makes several arguments that are distinct from one another and that, under our rules, should have been the subjects of separate assignments with appropriate references to the record. Nevertheless, because our review has not been impeded, we will reach the merits of all but one of petitioner's contentions.

■■ Petitioner's principal arguments take issue with the city's interpretation of the word "vacant" in the ordinance and with LUBA's conclusion that the city's findings were supported by substantial evidence in the whole record. The first argument is defeated by *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). The second argument consists largely of assertions about the weight of the evidence. Those matters were for the city as factfinder, not for LUBA or us, to decide. In any event, the only question that we resolve in connection with substantial evidence challenges in our review of LUBA decisions is whether LUBA correctly understood and applied the test. We do not conduct a second independent level of substantial evidence review. *Cusma v. City of Oregon City*, 92 Or App 1, 757 P2d 433 (1988). We are satisfied from our review of its opinion that LUBA's understanding and application of the substantial evidence test were free from error.

One of petitioner's arguments requires more extensive attention. The point of it is that the city's findings are internally inconsistent and that its conclusions do not follow from the findings. The city found, among other things:

"From 1987 on, [petitioner] returned to the building whenever he could to do small printing orders, sell his remaining inventory and sell his equipment.

"* * * * *

"The Council was unable to determine the precise level of activity which occurred on this site. The Council found that the [petitioner] failed to provide this information. The Council found that there was no evidence to indicate that business activity on the site, as previously established, continued after May, 1987. The City business license indicated only that there was a 'commercial rental' on the site. A license which shows 'commercial rental' only indicates that [petitioner] was the landlord of a 'commercial structure.' This business license designation does not provide any information on the nature or level of activity occurring on the site, and it does not acknowledge any land use status for the site. The Bureau of Licenses records show [petitioner's business] was licensed until May, 1987.

"The Council found that business activity of [the business] ceased as of May, 1987. The Council found that, from 1987 on, there was no telephone listing for [the business] and there was little consumption of electricity and water. The Council was unable to establish the specific level of activity on the site from 1987, but found no evidence to indicate that nonconforming rights had been preserved. The Council found that this element was not met."

The city concluded:

"The City Council found no evidence to indicate that printing and reprographics activities continued on this site beyond May, 1987 to the level which would maintain any nonconforming commercial rights."

LUBA recognized that

"[t]he findings concerning how the city characterized the activities conducted on the property after May, 1987 are confusing. * * * [I]t is somewhat unclear whether the city determined the nonconforming use was discontinued altogether, or whether the city determined the use continued

at an insufficient level to be preserved under PCC 33.258.050.D.1."

Nonetheless, LUBA held:

"We agree with the city that, read as a whole, the challenged decision determines that the nonconforming use was discontinued altogether after May, 1987, and the activities which the city found occurred on the site after May, 1987 were different from the prior nonconforming printing and reprographics use."

■   We do not agree. The findings and conclusions are contradictory. They simultaneously recite that business activity ceased in May, 1987, but that some activity, including printing, was conducted "from 1987 on." Moreover, the findings and conclusions appear to be founded on the legal premise that a nonconforming use is lost completely if it is not conducted at a "sufficient level" of intensity. That premise is contrary to our cases applying the general law of nonconforming uses, and the city's order does not interpret the ordinance as having—or not having—a meaning that differs from those cases. *See Weeks v. City of Tillamook*, 117 Or App 449, 844 P2d 914 (1992).

In *Warner v. Clackamas County*, 111 Or App 11, 824 P2d 423 (1992), we analyzed *Polk County v. Martin*, 292 Or 69, 636 P2d 952 (1981), and agreed with LUBA's conclusion that, under that case, "factors such as intermittency and infrequency are relevant to the *scope* of the [nonconforming] use, not its *existence*." 111 Or App at 13. (Emphasis in original.) *See also Hendgen v. Clackamas County*, 115 Or App 117, 836 P2d 1369 (1992).[1]

Petitioner argues that a use of the property for the nonconforming purpose during the relevant two-year period,

---

[1] As relevant, *Martin* and *Warner* relate principally to the establishment of nonconforming uses. *Hendgen* pertains principally to the continuity or abandonment of an established use and it indicates that a reduction in intensity, in itself, falls short of discontinuance or abandonment. 115 Or App at 120. The principles are interrelated, insofar as all three cases stand for the proposition that a nonconforming use can exist or continue at some level that is less than an exhaustive use of the affected property, as long as the ongoing use is of the same nature as and within the scope of the original one or of any altered or expanded use that has been lawfully allowed.

In the present posture of this case, there is no question before us about whether *some part* of the nonconforming use was or could be lost by reason of discontinuance.

regardless of whether the "level" of the use is "reduced," can relieve him from loss of the use under the discontinuance provision. He maintains that his inventory and equipment sales during and after 1987, as well as his printing activities, qualify as exercises of the nonconforming use. *Hendgen v. Clackamas County, supra*, on which petitioner relies, supports his general proposition about the continuity of nonconforming uses that have been reduced in intensity, but it does not support his contention that the inventory and equipment sales are part of his use. In *Hendgen*, we disagreed with LUBA's conclusion that a nonconforming use for ongoing storage operations was necessarily lost with the cessation of the more intensive nonconforming business activities that had originally accompanied the storage use. We explained:

> "To the extent that simple storage was part of any nonconforming use that the previous owners were conducting and that storage continued after they ceased business operations, then we are unable to agree that the cessation of the on-premises businesses was an abandonment of the storage use." 115 Or App at 121.

We added, however, that the converse was not true, and that the continuation of some nonconforming operations could not in itself confer nonconforming use status on activities that were not included in the original use or in the ongoing part of it. We said:

> "If the issue came from the opposite direction, LUBA's reasoning would be correct. On-premises sales and other business activities would not come within the scope of an existing nonconforming use that consisted only of storage." 115 Or App at 120.

That is the situation here. The city found that petitioner's nonconforming use was solely for a reprographics, blueprint and printing business. Petitioner's argument relating to the equipment and inventory sales is contrary to LUBA's specific ruling that petitioner had not preserved the contention before the city that the original use included other activities. His assignment to us is not adequate to challenge that ruling.

However, the printing activities that the city found were conducted "from 1987 on" appear facially to come within the nonconforming use that the city and LUBA

defined. Under *Martin, Warner* and *Hendgen*, the city's findings do not support its conclusion that the nonconforming use — or the printing part of it, at least — was discontinued for a two-year period.

We are aware that the cited cases involved applications of statutory law and the "common law" of nonconforming uses, which *may* not be identical to the requirements of the city's ordinance. However, as noted above, if the city understands its ordinance to mean something different from the principles stated in those cases, it has yet to articulate an interpretation to that effect. *See Weeks v. City of Tillamook, supra.*

■ We conclude that the findings are inconsistent with each other and, in the present posture of the city's order, they do not support the ultimate conclusion. A remand to the city is necessary. We emphasize, however, that the remand is a narrow one. The only question that we require the city to consider is whether petitioner's printing activities that, under its present findings, took place "from 1987 on" constituted a continuation of the nonconforming use or of some part of the use. In all other particulars, we agree with LUBA's disposition of petitioner's appeal.[2]

Reversed and remanded with instructions to remand to the city for further proceedings not inconsistent with this opinion.

---

[2] Although we have rejected petitioner's substantial evidence arguments, petitioner would not be foreclosed from challenging the evidentiary support for any findings that the city makes on remand that differ from the present findings. *See Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992).

In holding that the city's findings are inadequate, we have considered that its observation concerning petitioner's failure to provide certain information *could* be construed as a determination that he did not carry his burden of proof. Nevertheless, the city *did* make affirmative findings that are deficient for the reasons stated in the text.