Sam D. HINKLE, Appellant,

v.

**BOARD OF ZONING ADJUSTMENT AND APPEALS OF SHELBY COUNTY, Kentucky et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 17, 1967.

Rehearing Denied June 16, 1967.

Marion Rider, Frankfort, for appellant.

William H. Hays, Shelbyville, Frank J. Dougherty, Jr., Dougherty, Gray & Haunz, Louisville, and Ralph Mitchell, Saunders & Mitchell, Shelbyville, for appellees.

STEINFELD, Judge.

Sam D. Hinkle resides on New Seven Mile Road (State Highway 1506) in Shelby County, Kentucky about four miles south of Shelbyville. Across that road from his residence is land known as the Hedden-Reed tract. From time to time during the last seven years concurrently and separately a stone quarrying business and blacktop plant have been operated there. By this litigation Hinkle is seeking to prevent Proctor Bros. from operating a blacktop plant on the quarry property and Hedden-Reed Company from bringing on to that property, stone for the purpose of selling it to its customers. The lower court refused the demand made by Hinkle and he has appealed.

Proctor Bros. and Hedden-Reed contend that the right to operate the blacktop plant and sell the stone exists because the property was used for those purposes in the past; that such uses have not been abandoned and a continuance of those uses is permitted under the zoning laws and regulations with respect to nonconforming uses. It is important to a decision in this case that the history of the use of this property be examined.

On January 6, 1960, the quarry was opened and operations started, and about the 14th day of April, 1960, a blacktop (sometimes called asphalt) plant was erected and the production of blacktop material was started. About the 7th day of April, 1961, the quarrying operations were discontinued but they were resumed on the 5th day of September, 1961. Meanwhile the blacktop plant was producing. We digress momentarily to point out that on September 19, 1961, the Shelby County Fiscal Court adopted a temporary zoning order for the unincorporated areas of that county to become effective as of January 1, 1962.

On November 20, 1961, the operation of the blacktop plant was discontinued. Therefore, when the zoning order went into effect there was no blacktop being produced but the quarry was in general operation. In April 1962, almost four months after the zoning order became effective, the operation of the blacktop plant was resumed. It was continued until April 20, 1963, when the plant was again closed. The general operation of the quarry was continued until the early fall of 1963. Later that year the Hedden-Reed Company began to purchase stone from other producers and to store same on the subject premises and sell it to its customers.

On December 3, 1963, the Shelby County Fiscal Court adopted a permanent zoning order which took effect immediately and is in existence today. The subject land was zoned and designated on the zoning map as "Agricultural—Subject to Special Use". The permanent zoning order defines an agricultural district as follows: Article II, section 21, sub-section 2,

"Agriculture: the use of the land only —minus agricultural structures—for the cultivation of crops or the raising of animals or preservation in its natural state."

On March 24, 1966, Proctor Bros. filed with the zoning enforcement officer an application for a permit to construct and operate a blacktop plant. This application was denied by the officer, however, the application was brought before the Board of Zoning Adjustment and Appeals. On April 4, 1966, the Board conducted an extensive hearing at which Hinkle was present and on April 6, 1966, it authorized the operation of the blacktop plant by an order showing that it was adopted pursuant to section 23.2 of the zoning order. (No application was made to continue the operation of the quarry.)

Section 23.2 reads as follows:

"NONCONFORMING USES

Nonconforming uses may be continued subject to the following regulations:

A. Extensions: A nonconforming use shall not be extended or moved to

occupy any portion of land or a structure which would otherwise conform with this order.

B. Discontinuance: Whenever a non-conforming use of any premises has been discontinued for a period of twelve months, no nonconforming use may be re-established on those premises.

C. Changes: A nonconforming use may be changed to another nonconforming use which is no less compatible with permitted uses, but it may not be changed to a less compatible use. The Board of Zoning Adjustment and Appeals shall rule on compatibility upon application by the Enforcement Officer for an interpretation. A nonconforming use may be changed to a conforming use."

On the 27th day of April, 1966, Hinkle brought an action against the Board of Zoning Adjustment and Appeals of Shelby County, its members, Hedden-Reed Company, Proctor Bros. and the Zoning Enforcement Officer. After alleging various facts related in this opinion, and others pertinent to the issue, he charged that the order of April 6, 1966, was in excess of the powers of the Board and in violation of KRS 100.850 and KRS 100.872. His principal claim, and the one which he asserts in this court, is that the Board did not have the power to authorize the use of the premises for a blacktop plant, and that the property may not be used as a rock quarry because, he says, "this use had been abandoned for more than three years." He also charges that the blacktop plant operation was not incidental to the quarry activity but was an additional use. There were other issues raised in the lower court but they have since been abandoned and we will direct our attention only to those two claims made herein.

Proctor Bros. contends that the proceedings were regular and that "The entire question on this appeal is whether or not the Board was acting within its powers and not abusing its discretion in permitting a companion use to the nonconforming use previously established." Hedden-Reed Company points out that at the hearing in the court below "It was agreed by all parties and the court that the complaint was two separate and distinct actions 'count one' being an appeal from the decision of the Board of Adjustment and Appeals relating to the operation of the blacktop plant by Proctor Bros. and the 'second count' being a new action against Hedden-Reed Company to stop any and all activity on their premises which was non-agricultural by definition." Hedden-Reed claims that it is not involved in the application for or the operation of the blacktop plant; that the complaint failed to state a cause of action against it; and that there is nothing in this record by which a court would be authorized to enter a judgment against Hedden-Reed Company.

The trial court made findings of fact and reached conclusions of law, among which was:

"1. While it is true that the aforesaid premises are in a zone designated in the zoning order of Shelby County, Kentucky to be used for agricultural purposes only, the Board of Zoning Adjustment and Appeals found that said property was entitled to the benefit of the nonconforming use since they had been used as a rock quarry and materials had been extracted therefrom, received thereto, stored thereon and delivered therefrom continuously since prior to the effective date of the zoning order of Shelby County, Kentucky."

Hinkle argues vigorously that there were no facts in the record to justify the order which the Board entered and he contends that the Board did not make a "finding of

fact sufficient to support the conclusion reached." He relies upon American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450 to support that contention, and Proctor cites American Beauty Homes to sustain its argument. It is not necessary for us to determine whether or not the American Beauty Homes case is applicable, or if a distinction exists between the situation here and that which existed in American.

There was sufficient evidence before the Board at the public hearing of April 4, 1966, to give it a basis for making a determination that there was no abandonment of the nonconforming use and that the subject property might be used for a blacktop plant subject to the conditions which the Board imposed. These findings were confirmed by the trial court. We are not authorized to disturb such findings which were based on sufficient evidence. Neagle v. State Highway Department, Ky., 371 S.W.2d 630 and Cabe et al. v. Toler et al., Ky., 411 S.W.2d 41. Decided January 27, 1967.

Appellant relies on Durning v. Summerfield, 314 Ky. 318, 235 S.W.2d 761; Feldman v. Hesch, Ky., 254 S.W.2d 914, and City of Bowling Green v. Miller, Ky., 335 S.W.2d 893, 87 A.L.R.2d 1 to support his contention that there was a change from one nonconforming use to another nonconforming use which is not authorized. In Durning there was no proof of a continued use. A carnival had used the land for several days from time to time, but never regularly or even annually. In Feldman we found that there was an attempt to extend a nonconforming use, and in Green the proposed use was substantially different from what had existed. Those authorities are not applicable to this case.

Counsel for appellant argues that the law favors the gradual elimination of nonconforming uses of property and cites Attorney General v. Johnson, Ky., 355 S.W.2d 305 and Franklin Planning and Zoning Commission v. Simpson County Lumber Co., Ky., 394 S.W.2d 593. Those cases so hold but they do not support Hinkle. In Johnson the prior commercial use had been abandoned more than five years and in Simpson we held that a nonconforming use had not been enlarged.

The trial court, in the case at bar, found that there had "been no showing that the decision and order of the Board * * * was arbitrary, but on the contrary, it (had) been shown * * * that a full hearing was held, that all parties had an opportunity to state their positions * * * that these matters were fully considered by the Board and, therefore, the decision and order of the Board should be upheld." Judgment was entered accordingly.

At the time the Fiscal Court of Shelby County adopted the temporary zoning order the quarry and the blacktop plant were in operation. On the effective date of the zoning ordinance, January 1, 1962, Hedden-Reed Company was operating the quarry although the blacktop plant was not in operation at that time. On December 3, 1963, although the only activities at the quarry were the storage and sale of stone, the quarry was never abandoned. We held in Silliman v. Falls City Stone Company, Ky., 305 S.W.2d 322 that asphalt plants (otherwise known as blacktop plants) are incidental to the operation of a quarry. It is not customary for such plants to be operated on a continual basis because the production is frequently seasonal and depends upon the proximity of the need. We see no difference between the situation at the Hedden-Reed property and that which existed in the Silliman case. The facts show that the blacktop plant was opened and closed several times. Such an operation was not new to the premises, nor is there any indication that it was ever abandoned. We do not consider it significant that the present plant was located in a different place in the quarry from the former plant. It is well known that in quarrying operations the activities are moved from place

to place throughout the general area where the stone is located.

Appellant relies upon several cases which he contends sustain his position that the Board could not authorize the erection of the blacktop plant. He asserts that there has been a change of use which was the basis on which those cases were decided. Here there has been no change of the basic use of the property. It has always been a quarry and remains a quarry with the incidental uses that it has always had.

It is our opinion that the trial court was correct in upholding the order which authorized the operation of the blacktop plant.

 The second count of the complaint is an effort on the part of Hinkle to secure an adjudication that the subject property should not be used for any purpose except agricultural. The answer of Hedden-Reed put in issue the question of its right to use the property for the sale of stone. The trial court made no findings with regard to this issue. The judgment entered the 22nd day of June, 1966, adjudged nothing with regard to the Hedden-Reed Company. A supplemental judgment was entered on the 14th day of September, 1966, in which the trial court "dismissed as to all claims asserted and questions presented as to all parties to this action." Hinkle raised the issue that Hedden-Reed had no right to continue the storage and sale of stone on the subject property. The case was practiced as if Hedden-Reed had been a party to the proceedings before the Board. The case having been practiced in this manner, and in the light of the allegations of the complaint against Hedden-Reed the burden was on Hinkle to show that Hedden-Reed was engaging in a nonconforming use without right to do so. He did not meet that burden. The record before us is sufficient to indicate that the trial court correctly dismissed the action against the Hedden-Reed Company.

The judgment is affirmed.

All concur.