Argued and submitted June 13, affirmed August 6, petitioner's petition for reconsideration filed August 20 allowed by opinion October 22, 1997
See 151 Or App 16 (1997)

TIGARD SAND AND GRAVEL, INC.,
*Petitioner,*

*v.*

CLACKAMAS COUNTY,
Stafford Alliance for the Environment,
an Oregon non-profit corporation ("SAFE"),
Far West Clackamas County CPO,
Hon. Katharine English, Charles Gault,
Larry Edelman, John Prince, Claudia
Navaratril, Carla Green, Cindy Tyree,
Kay Jewett, Yvonne Jacobs, Ruth Hardie
and Theonie Gilmore,
*Respondents.*

(LUBA No. 96-182; CA A97209)

943 P2d 1106

Michael J. Lilly argued the cause and filed the brief for petitioner.

Michael E. Judd, Chief Assistant County Counsel, filed the brief for respondent Clackamas County.

Jeffrey L. Kleinman argued the cause and filed the brief for respondents Stafford Alliance for the Environment, Far West Clackamas County CPO, Hon. Katharine English, Charles Gault, Larry Edelman, John Prince, Claudia Navaratril, Carla Green, Cindy Tyree, Kay Jewett, Yvonne Jacobs, Ruth Hardie and Theonie Gilmore.

Frank M. Parisi and Parisi & Parisi filed the brief *amicus curiae* for Oregon Concrete and Aggregate Producer's Association.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

## DEITS, C. J.

Petitioner seeks review of LUBA's decision affirming a Clackamas County hearings officer's declaratory determination that petitioner's nonconforming use for a rock quarry operation has been lost due to both interruption and abandonment. We affirm.

We take the material facts from LUBA's opinion:

"Petitioner owns and operates a rock quarry which is the subject of this appeal. The quarry has been a nonconforming use since zoning was first applied to the property in 1973. Between 1984 and 1991, petitioner discontinued blasting, crushing and other quarrying activities at the site, and removed most indices of a quarry operation. Some rock remained stockpiled on the site, and petitioner asserts that occasionally during that period stockpiled rock was either used by petitioner for its own purposes or sold to landscapers. Petitioner resumed the quarry operation after 1991."

After providing that general overview, LUBA quoted the relevant findings and conclusions of the hearings officer:

"Based on all the substantial evidence in this record, the Hearings Officer finds as follows: that no crushing or quarrying activity occurred on the subject property from 1984 through 1991; although there were stockpiles of crushed aggregate and pit run material on the site during this period of time, the site did not remain open for the sale of that material; minor sales of material probably occurred from this site during the years 1983, 1984, 1985 and 1986, but such sales were of small quantity, and were incidental in nature; by the end of 1988, approximately 2 years had passed during which no identifiable activity associated with a quarry use occurred on the subject property; and, between the years of 1989 through 1991, the use of this property was converted to a firewood processing and wood sorting business, and the quarry use of the site was abandoned.

"In reaching the above determinations of relevant facts, the Hearings Officer is particularly persuaded by the testimony of the activities on the site, by the absence of reliable evidence from the site owner, Tigard Sand & Gravel, concerning its activities on the site during the years 1984

through 1991, by the expert testimony of [specified witnesses], and by the physical evidence of the abandonment of the site, including the absence of vehicle tracks, the absence of, or rusted-out condition of, quarry machinery and equipment and the abandoned structures.

"* * * * *

"Applying the case law to the above findings of historical fact, the Hearings Officer concludes that this quarry use was discontinued for a period of time more than 12 consecutive months, specifically at least from 1987 through 1991, and, in accordance with ORS 215.130(7) and ZDO [zoning ordinance] 1206.02, may not be resumed unless in accordance with applicable ZDO provisions and other applicable regulations. The Hearings Officer also concludes that, upon the establishment of the firewood processing and wood sorting business on the subject property in 1989, the use of this site for a quarry operation was abandoned, and could be resumed only if in compliance with applicable ZDO provisions and other applicable regulations."

In affirming the county's decision, LUBA rejected petitioner's arguments, *inter alia*, that the hearings officer's central findings were not supported by substantial evidence in the whole record, and that his decision was contrary to *Polk County v. Martin*, 292 Or 69, 636 P2d 952 (1981). We agree with LUBA in both particulars and write to emphasize certain points.

ORS 215.130(7) provides that a nonconforming use

"may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption."[1]

---

[1] The county's nonconforming use provision, section 1206.02 of its zoning ordinance, establishes 12 months as the period of "discontinuance" after which a nonconforming use may not be resumed. It uses the word "discontinued" and variations of it, rather than the statutory term "interruption," and the hearings officer's order and LUBA's opinion sometimes use the former term, apparently as a synonym of the latter. No separate issues that call for discussion here arise under the ordinance, and we will refer to the statute only in the balance of this opinion. *See Marquam Farms Corp. v. Multnomah County*, 147 Or App 368, 380, 936 P2d 990 (1997). This opinion applies and refers to ORS 215.130 as it read at the time of the relevant events.

In this case, as LUBA noted, the hearings officer concluded that the nonconforming quarry use had been *both interrupted* (through nonuse) and *abandoned* (through the conversion of "the property to a firewood processing and wood sorting business"). LUBA observed, correctly, that petitioner's arguments did not differentiate sharply between the county's findings of interruption and abandonment, but that the

> "two concepts are distinct, and in this case provided two independent bases under ORS 215.130 for the county's conclusion that petitioner lost its right to resume its quarry operation."

The focus of petitioner's legal arguments to LUBA and to us is that the quarry use here retained its nonconforming status under the rationale of *Martin*. The court held in that case that a nonconforming quarry use had not been "interrupted," for purposes of ORS 215.130(7), by virtue of fluctuations in the level of the use or the sporadic and intermittent manner in which it was conducted. Noting that the periodic and varying pattern had been characteristic of the quarry operation virtually throughout its history of over 30 years, the court concluded in *Martin* that the fluctuating and sporadic nature of the activity was relevant to the scope of the nonconforming use but did not negate its ongoing existence. *See also Warner v. Clackamas County*, 111 Or App 11, 824 P2d 423 (1992).

Petitioner emphasizes certain factual similarities between this case and *Martin*, *e.g.*, the ongoing presence of stockpiled rock and some "pit run" extractions and sales of rock that ostensibly occurred at some times between 1984 and 1991. LUBA rejected petitioner's effort to analogize the two cases, explaining:

> "The problem with petitioner's argument is that the factual situation in this case is not the same as that in *Martin*. Unlike *Martin*, the 'fluctuation in production' from petitioner's quarry cannot be explained by the nature of its business. At no time has the quarry operation been 'sporadic and intermittent' as that phrase was applied to describe the operation in *Martin*. To the contrary, prior to 1984, and after the quarry operation resumed in 1991, petitioner's records show there was then and now is again an active, ongoing quarry operation. In direct contrast,

between 1984 and 1991, the hearings officer found no evidence of any ongoing operation. No quarrying activities were conducted, essential equipment was removed, the site was left unmaintained, and in 1989 at least a portion of it was leased for another, unrelated business use.

"* * * * *

"In this case, the hearings officer's finding of discontinuance rests not only on his finding that possible sales or other removal of stockpile[d] rock at times during the late 1980's was no more than 'incidental,' but also on his finding that there was more than a two-year period during which there was no quarry-related activity at all. The county's conclusion is both reasonable and correct. Evidence of stockpiled rock in an otherwise unused and unmaintained quarry does not constitute an ongoing quarry operation." (Footnote omitted.)

LUBA therefore agreed with the county's conclusion that the use had been discontinued or interrupted. For similar reasons, LUBA disagreed with petitioner's contention that the county erred in concluding that the use had been abandoned. LUBA stated:

"With regard to the county's finding of abandonment based on the [1991 firewood and wood business use], petitioner's argument appears to be essentially the same: so long as rock continued to be stockpiled on the site, there could be no abandonment under ORS 215.130."

LUBA concluded that the change from the quarry use to a totally different business operation on the property from 1989 to 1991 constituted an abandonment of the nonconforming use. *See Lane County v. Bessett,* 46 Or App 319, 612 P2d 297, *rev den* 290 Or 1 (1980).

■    In its first assignment of error to us, petitioner argues that LUBA erred in concluding that this case is distinguishable from *Martin* and, therefore, in concluding that the nonconforming use had been interrupted and abandoned. Again, petitioner relies on selected factual similarities between the two cases, principally, the ongoing presence of *some* stockpiled rock. Insofar as petitioner's argument posits that the same legal conclusion should follow because the two cases are materially indistinguishable on their facts, we

agree with LUBA's view that the cases are factually and legally different. Unlike *Martin*, where intermittency and periods of low activity had been characteristic of the use throughout its history, the activity in this case was intense at all relevant earlier times, then became minimal and sometimes nonexistent during the seven-year hiatus, and was then restored to an intensive level at the time of the purported resumption.

The *amicus* appears to share petitioner's view that *this* case and *Martin* are materially alike, but emphasizes a somewhat different theme, *i.e.*, that *all* cases involving nonconforming quarries are like *Martin* and that it is difficult if not impossible for any nonconforming quarry use to be deemed interrupted or abandoned consistently with *Martin*. The *amicus* bolsters its position with out-of-state authority and with generalized observations "about the way the aggregate industry operates." The *amicus* also relies on the following observation that the court made in *Martin*:

> "[Q]uarry operations are by their nature sporadic, and a discontinuance or abandonment cannot be inferred from the mere fact blasting and crushing cease * * *, or from fluctuations in the volume of extractions or sales." 292 Or at 76.

As the *amicus* acknowledges, that language in *Martin* is a quotation of the statement that we made in *Bessett* to describe the argument of the party claiming the existence of the nonconforming quarry use. *Id.* at 326. However, we went on to state in *Bessett*:

> "While we agree with that concept in the abstract, we do not agree with any implication by [the party]—if such is intended—that a quarry use *cannot* be abandoned." *Id.* at 326.[2] (Emphasis in original.)

We do not understand *Martin* to say or suggest otherwise. It is of course true that quarry uses are likely to have *some* similarities with one another that are not as likely to be shared by uses of other kinds. It *may* be that quarry uses are generally more likely than some other types of uses to be characterized by variations in activity levels and, when

---

[2] Our statement there implicitly included—and we extend it here to expressly include—interruptions as well as abandonments.

that is so, that their "continuity" should be gauged accordingly. *Martin* may indicate that much, but it cannot be read to indicate as much as the *amicus* reads into it, *i.e.*, that nonconforming quarry uses are all but categorically immune to a finding of interruption or abandonment, at least as long as a pile of rocks remains on the site. In this case, under the hearings officer's findings, petitioner's quarry use was not simply fluctuating, intermittent or sporadic. For a period of seven years, it virtually had stopped, and, for the last two of those seven years, the site on which it had been conducted was used principally, if not exclusively, for a business activity that was totally unrelated to quarry operations. Under the findings, the nonconforming quarry use was both interrupted and abandoned as a matter of law, and the resumption of the use was foreclosed by ORS 215.130(7).

■      Petitioner also argues, in its second assignment, that the hearings officer's findings were not supported by substantial evidence in a number of particulars. Petitioner's principal contentions take the form of descriptions of particular items or general types of evidence, which, petitioner asserts, were given too little or too much weight by the hearings officer or, in some instances, were not understood correctly by the hearings officer. Petitioner makes corresponding contentions about LUBA's evaluation of the evidence and the county's findings and about LUBA's conclusion that the findings were supported by substantial evidence in the whole record.

■      Stripped to its essentials, petitioner's argument consists mainly of assertions about the credibility and weight of specific evidence. However, LUBA does not review local findings *de novo*, nor is it permitted to weigh the evidence independently in conducting its substantial evidence review. *1000 Friends of Oregon v. Marion County*, 116 Or App 584, 842 P2d 441 (1992) (substantial evidence review is not *de novo* and does not entail or permit reweighing of evidence by LUBA); *see also Cusma v. City of Oregon City*, 92 Or App 1, 757 P2d 433 (1988) (this court's review of LUBA's substantial evidence determinations is generally limited to deciding whether LUBA correctly understood and applied the legal test). Petitioner's argument fails insofar as it depends on

assertions that depend on a broader scope of review than either LUBA or we have.

However, as noted, petitioner's argument appears also to be premised in part on the view that the county, LUBA or both misunderstood the substance or the import of particular items of evidence. Assuming that that aspect of petitioner's argument might provide a basis for reversal if it were correct, it is not. Our review of the original evidence in the record indicates to our satisfaction that the county and LUBA understood the evidence in question sufficiently and, in the instances where petitioner's understanding differs, the county and LUBA understood it as well or better than petitioner does.

Petitioner's remaining arguments do not require separate discussion.

Affirmed.